612 P.2d 1302

**In the Matter of the Remains of Susie Catherine JOHNSON, Deceased.**

**No. 12627.**

Supreme Court of New Mexico.

June 23, 1980.

Paul R. Onuska, Dist. Atty., Val R. Jolley, Deputy Dist. Atty., Randall S. Roberts, Asst. Dist. Atty., Farmington, for appellant.

## OPINION

EASLEY, Justice.

The New Mexico Board of Medical Investigations (Board) filed a motion requesting that the district court issue an order to disinter the remains of Susie Catherine Johnson. The court, without notice or hearing, granted the motion three days after it was filed. A son of the deceased filed a motion to reconsider, to have a hearing and to set aside the order. After a hearing, the trial court set aside the order for disinterment. The Board appeals. We affirm.

This is a case of first impression. We address whether the trial court acted without jurisdiction and whether, if it had jurisdiction, it abused its discretion in denying the Board's motion to disinter Mrs. Johnson's remains.

Eighty-four year old Susie Catherine Johnson, who had Parkinson's disease, arthritis, advancing senility and other health problems, had lived with and had been attended by her daughter for a number of years. When she called the police requesting an ambulance for Mrs. Johnson, the daughter admitted hitting her mother, allegedly in exasperation, causing a split lip. The daughter denied causing other bruises on her mother's body and face, claiming that these resulted from Mrs. Johnson's falls due to her affliction with Parkinson's disease.

Mrs. Johnson died eight days after going to the hospital and was buried before the police report, which raised some questions about the cause of her death, came to the attention of the district attorney. It was at this point that the effort was made to disinter her body in order to conduct an autopsy to determine if the cause of death was due to a criminal act. The Board's motion to disinter alleged that the district court had jurisdiction, that there was evidence that Mrs. Johnson had "been beaten or assaulted" prior to her death, that the Board had authority to investigate if the cause of death was obscure, and asked for disinterment and an autopsy.

At the hearing the family doctor, who had executed the death certificate stating Mrs. Johnson had died of natural causes, reiterated this opinion. The doctor and two other family members testified that they had neither heard of nor seen Mrs. Johnson's daughter abusing Mrs. Johnson, that the daughter had never tried to get anyone else to take over the responsibility of caring for Mrs. Johnson and had never suggested she be put in a nursing home, and that Mrs. Johnson near the end had become continually more despondent, cranky, hard to handle and care for and more prone to falling.

A forensic pathologist testified at the hearing that as a result of the police report and photographs of Mrs. Johnson, which showed bruises on Mrs. Johnson's face and body, he had recommended to the Board to seek disinterment because her death may have been caused by a criminal act or omission.

After the hearing on the Board's motion, and before a decision was entered by the court, the Board filed a motion to dismiss the cause. It alleged that the original motion had been filed because the cause of Mrs. Johnson's death was obscure, and that the action was authorized by Section 24–11–7, N.M.S.A.1978 (Repl.Pamp.1979). However, the Board claimed that it had authority to disinter without court authorization under a number of Health and Social Services Department (HSSD) regulations. Therefore, the Board requested dismissal so that it could proceed to obtain a disinterment permit under these regulations.

The court issued its order denying disinterment and an autopsy, finding that there was a medical probability that Mrs. Johnson died of a stroke and that the cause of death was not obscure. No finding or conclusion was requested or entered regarding the application of the HSSD regulations.

Section 24–11–3, N.M.S.A.1978 (Repl. Pamp.1979), provides for the appointment of state, district and deputy medical investigators and sets forth their duties. These medical investigators work under and through the auspices of the Board. Section 24–11–7 specifies that when a medical investigator "suspects a death was caused by a criminal act or omission or if the cause of death is obscure, he *shall* order an autopsy . . . ." Section 24–12–4, N.M.S.A.1978, provides that an autopsy *may* be performed whenever consent to the procedure has been given, by the deceased during his life or by certain relatives. However, this same section, under an independent paragraph, Section 24–12–4(D), uses similar wording to that in Section 24–11–7: that the medical investigator *may* order an autopsy when "he suspects the death was caused by a criminal act or omission or if the cause of death is obscure." This separate provision, which says nothing concerning consent, applies where, as here, there has been no consent by the deceased and a family member objects to the autopsy. Further, Section 24–12–4(D) vests in the medical investigator in such cases the discretion to order an autopsy since it states he "may" order one.

It is clear that the statutory purpose is to authorize a medical investigator to order an autopsy when he suspects that criminal conduct caused a death or that the cause of a death is obscure even when no consent is obtained.

As concerns the Board's authority to *disinter* without court authorization, in order to perform an autopsy, it naturally follows that a medical investigator needs access to the body of a deceased in order to carry out this function. Section 24–14–23(D), N.M.S.A.1978 (Repl.Pamp.1979), provides:

A permit for disinterment and reinterment shall be required prior to disinterment of a dead body or fetus except as authorized by regulation or otherwise provided by law. The permit shall be issued by the state registrar to a licensed funeral director.

Thus, it is clear that a permit is required for disinterment and that the Board could have gone to the New Mexico State Registrar to obtain one. The State Registrar administers and enforces the New Mexico Vital Statistics Act, § 24–14–1, *et seq.*, N.M. S.A.1978 (Repl.Pamp.1979), and is appointed by the Director of the Health Services Division of the Health and Environment Department.

■ The Board, in its effort to get this case dismissed, relied on various HSSD regulations. HSSD was the predecessor to the Health Services Division of the Health and Environment Department. *See* N.M.Laws 1977, ch. 253, § 5, § 15 and § 79. These regulations merely reinforce the fact that the State Registrar "shall" issue a permit to disinter when a medical investigator so requires pursuant to the duties and responsibilities of his office. Regulations Covering the Reporting, Transporting, Storing and Disposing of Dead Human Bodies and Fetal Remains, 20.3 and 20.3.3. As demonstrated by our discussion of the relevant statutes above, this Court has no disagreement with the Board concerning its authority to perform autopsies or obtain permits for disinterment when there has been no consent to such procedures by the deceased during his life or by his closest relatives and when the medical investigator suspects foul play or an obscure cause of death.

■ But, as concerns the issue of whether the district court had the jurisdiction to act in this matter, we point out that the Board is the party which originally invoked the jurisdiction of the trial court. Having invoked such jurisdiction, the Board cannot now deny that such jurisdiction exists, especially now when the trial court's ruling is adverse to the Board. *See Ortiz v. Gonzales,* 64 N.M. 445, 329 P.2d 1027 (1958); *Williams v. Arcoa International, Inc.,* 86 N.M. 288, 523 P.2d 23 (Ct.App.1974), *cert. denied,* 86 N.M. 281, 523 P.2d 16 (1974). In

addition, the trial court did have subject matter jurisdiction since it is a court of general jurisdiction and there exists no statute in New Mexico which specifically deprives a court of general jurisdiction from hearing such cases.

■ Since we hold that a medical investigator can in the exercise of his discretion order an autopsy and obtain a permit for disinterment, normally a district court would not become involved in such matters unless a protesting relative or interested party files an injunction or takes some other legal action to halt the autopsy or disinterment. Because this Court has previously held that there is a quasi-property right in a dead body which vests in the nearest relative of the deceased, *Barela v. Frank A. Hubbell Company,* 67 N.M. 319, 355 P.2d 133 (1960), under some circumstances due process may require that the interested relative be given notice of an intended autopsy or disinterment. N.M.Const. art. II, § 18; U.S.Const., amend. XIV, § 1. However, we do not reach this issue since the protesting son had a full hearing and prevailed on his claim.

■ Given the record and the fact that the trial court had the opportunity to observe the witnesses and weigh the testimony, we hold that it was not an abuse of the trial court's discretion to rescind its first order permitting disinterment. This holding is further supported by the right the law recognizes to undisturbed repose in the grave which usually prohibits acts in violation of sepulture. *See Theodore v. Theodore,* 57 N.M. 434, 259 P.2d 795 (1953); Annot., 63 A.L.R.3d at 1298.

We affirm the trial court.

IT IS SO ORDERED.

SOSA, C. J., and PAYNE, J., concur.